UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS G. ADAMSKI<br>41 River Road<br>Erving MA 01344<br><br>      Plaintiff,<br><br>            v.<br><br>JOHN McHUGH, Secretary of the Army<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)    CA No. _____<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY RELIEF

This is a non-monetary claim to overturn and remand to the Army Board for Correction of Military Records #AR2010-0027880 (Jan. 1, 2011), its refusal grant plaintiff's request to reconsider BCMR decision #AC89-07597 (Sept. 13, 1989) that had denied as untimely his application for disability retirement for Post-Traumatic Stress Disorder [PTSD].  The BCMR's 2011 refusal relied on a new rule in 2006, retroactively applied, that all reconsideration requests "must be received within one year from the BCMR's original decision." A.Reg. 15-185 ¶ 2-15b.

Plaintiff challenges the BCMR's 2011 particular application of ¶ 2-15b to his case as unreasonably retroactive– by extinguishing his right to reconsideration of a 1989 BCMR decision that "will be granted" under then A.Reg. 15-185 (1977) upon "discovery of new and relevant evidence," that he reasonably relied thereon — and as unjustly retroactive as plaintiff since 1986 has been totally mentally disabled and unemployable from PTSD.

In the alternative, that the Court suspend proceedings to permit the BCMR to reconsider plaintiff's request for reconsideration submitted November 12, 2010.   In the interests of settlement, plaintiff herein goes beyond a mere notice pleading.

### JURISDICTION AND VENUE

Jurisdiction is conferred on this Honorable Court by the Administrative Procedure Act, as amended, 5 U.S.C. § 702 and § 706(2)(A).

Venue is proper as the Defendant is found in this District.

-1-

PARTIES

Plaintiff, Thomas Adamski, is former active duty enlisted soldier in the U.S. Army.

Defendant, John McHugh, in his official capacity, is the Secretary of the Army.

FACTS

1.  Mr. Adamski served as an enlisted soldier in the regular Army from 1970 to 1973 during the period of the Vietnam War.

2.  His final Army service was as a paratrooper.  He experienced stressful and "faulty jumps."  In one near-death jump in November 1972, his primary then and auxiliary chutes failed to open, and only at the last moment the auxiliary chute opened.  For "two months" thereafter, Adamski experienced "eye twitches and nervous tics."  Efficiency reports dropped in performance, leading ultimately to terminating jump status.  Concurrently in early 1973, he was treated by an Army doctor for these nervous conditions, prescribed Dilantin– an anti-convulsant for seizures– with several months refills (entry 15 Jan 1978, Ft Bragg Medical Clinic).  The VA later recognized the 1973 treatment after the "parachute incident for eye twitches and a tic were clearly symptoms of a new nervous condition." [1]  Recently, Dilantin [Phenytoin] has been effective treating PTSD.[2]

3.  Shortly thereafter in March 1973, Adamski requested early separation.  The alleged reason was "help with the family's farm work."  Moreover, he omitted reporting at the exit medical exam the nervous condition and emotional problems.  Release was granted effective June 1973.

4.   Due to stigma during and immediate post-Vietnam period, such omissions by Adamski as a service member were not uncommon.  PTSD was not included in the DSM-III until 1980, and unrecognized by the VA until 1982.  In the 1970s and into the 1980s, the collection of symptoms were still pejoratively called— both medically and culturally– the "post-Vietnam syndrome."

---

[1] Noted in 2004 VA Decision.

[2] D. Bremmer et al., *Treatment of PTSD with Phenytoin* J Clin Psychiatry. 2004 Nov; 65(11): 1559-64; see  http://www.ncbi.nlm.nih.gov/pubmed/15554773.

Service members and veterans in society then faced recriminations causing delay in these mental health claims.[3]

5.   There is a perception of stigma among service-members even today.  In 2012 the Army Surgeon General stated that the two primary barriers to soldiers seeking treatment for PTSD are— the stigmatizing effects of mental health diagnoses; and soldiers react to trauma like civilian first-responders, in that "although they may experience fear internally they are trained to fall back on their training skills...expressing fear and helplessness in less direct ways."  OTSG/MEDCOM *Policy Memo* 12-035 (April 2012).[4]

6.   By November 1973 Adamski began a period of intense medical treatment for about 6 years for chronic emotional problems.  From 1978 to 1986, he was repeatedly hospitalized as an acute inpatient at various VA hospitals with a mental problems.  By October 1986 the Northampton Mass., VAMC, diagnosed Adamski as suffering from PTSD.

7.   In November 1987 the VA denied Adamski "service-connection" disability for PTSD resulting from parachute training.  At that time such training alone did not qualify as evidence of a life-threatening stressor under the then restrictive DSM-II criteria for PTSD stressors.  This was because a qualifying traumatic event was initially conceptualized as a catastrophic stressor outside the range of usual human experience–

> The framers of the original PTSD diagnosis had in mind events such as war, torture, rape, the Nazi Holocaust, the atomic bombings of Hiroshima and Nagasaki, natural disasters (such as earthquakes, hurricanes, and volcano eruptions).

VA National Center for PTSD.[5]

---

[3] This is analogous to fear of recriminations in reporting sexual assaults in the military, and later claims for PTSD. AZ v. Shinseki, __F.3d__ (Fed.Cir.2013)(Dkt. 2012-7046, Sept 30, 2013)(error for VA to deny PTSD claims by relying on absence in service records documenting the alleged assaults as evidence assaults did not occur).

[4] http://cdn.govexec.com/media/gbc/docs/pdfs_edit/042312bb1.pdf

[5] http://www.ptsd.va.gov/professional/PTSD-overview/ptsd-overview.asp

8.  In January 1988 Adamski applied *pro se* to the BCMR seeking disability separation or retirement due to PTSD, retroactive to 1973.  The BCMR in September 1989 denied the application as untimely as beyond the three-year statute of limitations from discovery of an error or injustice.  10 U.S.C. §1552(b).  In finding it was "not in interests of justice to waive the untimely application," the BCMR said the three year-clock to apply for PTSD disability began in 1973, expiring in 1976 (although PTSD was not formally recognized as an illness until mid-1980s, with Adamksi not diagnosed until 1986).   The BCMR also relied on the 1987 VA denial of service-connection for PTSD that found parachute training was not a life threatening stressor.  Due to his deteriorating mental condition (as set forth below) Adamski submitted few military records.

9.  In 1990 Adamski was granted total disability from PTSD by the Social Security Administration, retroactive to 1986.  This remains current.

10.  From 1990 to 2002, the VA repeatedly acknowledged losing Admaski's military health and personnel records.  He was totally mentally disabled and unemployable since 1986.  These factors prevented efforts to seek reconsideration of the 1987 VA denial and 1989 BCMR decision.

<u>2004 VA decision grants 100% rating fro PTSD and unemployability</u>

11.  In 2004, the VA reversed its 1987 denial, awarding 100% service-connected PTSD with unemployability.  The VA under DSM-IV (1994) expanded PTSD criteria, agreed with his VA attending providers that— his parachute accident, followed by changed duty performance, medical treatment for a nervous condition, request not to be in jump status, and abruptly leaving the service early, "fits the pattern of a [PTSD] stress reaction to a stressor."  The VA agreed Adamksi  had "continuous treatment for what amounted to this [PTSD] condition since you left the service." Lastly, the VA found serious impairment in judgment, thinking and moods, relationships, in long term memory, along with neglect of personal care and hygiene.  The VA found his psycho-social Global Assessment of Functioning score very low at 31, indicating—

> impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant);  major impairment in several areas, such as work, family relations, judgment, thinking, or mood (depressed adult avoids friends, neglects family, and unable to work).

IH Monrad, *"Guidelines for rating Global Assessment of Functioning (GAF)."* <u>Annals of General Psychiatry</u> (2011).[6]

12.  From 2005 to 2009, Adamski was repeatedly hospitalized for PTSD as an inpatient at various VA hospitals.

<u>2010 application to BCMR to reconsider 1989 decision.</u>

13.  In 2010, Mr. Adamski requested the BCMR reconsider its 1989 BCMR decision that it was untimely.  He was represented by a non-lawyer veterans advocate.  He attached the 2004 VA decision that mentioned from 1973 "continuous treatment for what amounted to this [PTSD] condition since you left the service."  Also the SSA decision, Army health and personnel records.

14.   Although the <u>Mullen</u> case was not cited by Adamski, the case was relevant to whether the BCMR should have, in interests of justice, waived the untimely application.  <u>Mullen v. U.S.</u> 19 Cl.Ct. 50 (1990)(reversing BCMR's 1983 denial as untimely veteran's 1982 application for PTSD disability retirement from 1970 discharge).   The <u>Mullen</u> court held that the Army–

> BCMR abused its discretion in refusing to waive the three-year limitation period when evidence showed Mr. Mullen in all likelihood has been suffering from PTSD since the early 1970s. While the determination of whether Mr. Mullen in fact suffered from PTSD during the 1970s is for the Board, *there is sufficient reason to believe that Mr. Mullen may have suffered from PTSD, prior to the time he filed his application for correction* of his records, that the Board should have waived the three-year time limit in the interests of justice.
>
> Alternatively, it appears that Mr. Mullen's application was timely. Under § 1552(b) a claimant must file his request for a correction of records within three years of discovering the error. Although Mr. Mullen experienced depression and related psychopathological symptoms throughout the 1970s, *it was not until 1981 that he was told by a physician that he suffered from PTSD. Thus, it was not until 1981 that Mr. Mullen discovered that his honorable discharge in 1970 was in error*; Mr. Mullen's April 13, 1982 application fell within the three-year limit.

<u>Mullen</u> at 551-52 [emphasis added].

15.  Adamski's 2004 VA decision, along with the SSA disability award, show "continuous treatment for what amounted to this [PTSD] condition since [he] left the service."  Secondly, his 1988 BCMR application was timely since he was not properly diagnosed with PTSD until 1986.

---

[6] http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3036670/

-5-

16.   However, the BCMR in 2011 summarily refused Adamski's request to reconsider its 1989 decision.   The BCMR applied its new 2006 one-year reconsideration rule, in his case, to retroactively revoke a right to reconsideration upon 'new evidence' because the one-year time limit expired in 1999— one year from the BCMR's 1989 original decision.  Landgraf v. USI Film Products, 511 U.S. 244, 293, n. 3 (1994)(Scalia, J. concurring)(if regulation is interpreted to attach legal consequences to an event that predated the regulation's effective date, there may be retroactivity violation).

17.   Mr. Adamski's 1989 BCMR decision explicitly imposed no such arbitrary time limit to reconsideration— but rather, conferred him a substantive right, and led him to believe that,

> in the absence of new evidence showing that is would be in interests of justice to excuse your failure to timely file, further consideration by the Board is not appropriate.

See 1989 BCMR cover letter to decision.  This followed then A.Reg 15-185 (1977) ¶ 22 stating a longstanding policy on criteria that reconsideration "will be granted" upon presentation of newly discovered relevant evidence not previously considered by the Board.

18.   After the 2006 rule change, Army BCMR practice when issuing original BCMR denials is to provide clear notice by citing ¶ 2-15b that the applicant has one year to request reconsideration.  As a result, when the 2011BCMR mechanically applied the 1-year cut-off to Adamski's situation, it raised the fair notice presumption against retroactive rules—

> Elementary considerations of fairness dictate that individuals should have an opportunity to what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted.  For that reason the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.

Landgraf at 265.   Here, the 2011 BCMR refusal was impermissibly retroactive because it both "impaired rights" that Adamski possessed in 1989 and "imposed a new duty to a transaction already completed." Id. 280.

19.   U.S. Circuit Courts of Appeal.  They have found that mechanically applying a new limitations period to claims accruing before, but filed after, the new period became effective implicates retroactivity concerns when they are manifestly unfair. Hanner v. Mississippi, 833 F.2d 55, 57-58 (5th Cir.1987) (plaintiffs whose cause of action accrued before, but who filed after

shorter limitations period was adopted, must be given "reasonable time" within which to bring their actions); Usher v. City of Los Angeles, 828 F.2d 556, 559-61 (9th Cir.1987) (plaintiffs significantly prejudiced where effect of new rule shortened limitations period such that they had no opportunity to follow new rule); see Cf., Walsche v. First Investors Corp., 981 F.2d 649, 654 (2d Cir.1992) (new rule announcing a shorter period of limitations applied prospectively; new rule upsets settled expectations of the parties, so equitable to permit those who may have relied on prior law to continue under the same legal understanding with which it was commenced);  see Cf., Bergerco Can. v. US Treasury Dep't,129 F.3d 189, 193-94 (D.C.Cir.1997)(retroactivity law is concerned with protecting reasonable reliance; no evidence here that new agency rule reversed longstanding policy on criteria governing applications).

Relevant legal cases to equitably toll agency requests for reconsideration seeking disability

20.   PTSD was not added to the American Psychiatric Association's DSM-II until 1980. This remained controversial even by 1990, not adopted internationally in ICD-10 until 1992.[7]   The VA began PTSD treatment in mid-1980s.  The VA did not begin to effectively treat  PTSD until the late 1980s-early 1990s with second-generation medications, notably Prozac, Zoloft, and Paxil.

21.   The Supreme Court in 2011 decided Henderson v. Shinseki,131 S.Ct. 1197 (2011) (appealing deadline procedural rule not jurisdictional but "claims-processing rule" subject to equitable tolling; reversing veterans court dismissal as untimely the notice of appeal of mentally ill veteran's benefits claim outside 120 deadline; clarifying Bowles).  The Veterans Court initially dismissed the appeal as untimely by concluding that Henderson was not entitled to equitable tolling because he had not shown his illness caused the tardy filing.   The Federal Circuit dismissed it, under Bowles v. Russell,, 5 U.S. 205 (2007)(statute of limitations of notice of appeal in ordinary civil case is jurisdictional so equity tolling not apply).

---

[7] http://www.ptsd.va.gov/professional/pages/ptsd-overview.asp. See also Scott, W. J., 1990. *PTSD in DSM-III : A case in the politics of diagnoses and disease*. *Social Problems,* 37 (3).

22. The Supreme Court in <u>Henderson</u> relied on the fact VA claims are not ordinary, but uniquely informal, non-adversarial, and protective of claimants. The analog is to social security disability claims, while "the solicitude of Congress for veterans is of long standing." The court found that the "rigid jurisdictional treatment" of the period for filing an appeal "would clash sharply with this scheme."

23. A similar paternalistic approach towards military members was applied to a BCMR denial. <u>Robinson v. Resor</u>, 469 F.2d 944, 947, 950 (D.C.Cir. 1972) (reversing BCMRs discharge upgrade denial; soldier had signed request in lieu of trial while in hospital from nervous collapse and deep mental shock from mental strain of wife's illness combined with court-martial charges). Although the court agreed the soldier was legally competent "certified sane", the Army BCMR failed to weigh these "other pressures which obviously affected the soundness of Robinson's judgment" when he signed the discharge request. <u>Id</u> at 950.

24. The <u>Robinson</u> case re-affirmed the BCMR's mandate to correct not only legal error but inequity, by quoting from the Supreme Court:

> We hold that the relation of the Government to its soldiers, both as to substantive decisions on their status *and the procedures used to arrive at those decisions, must be "if not paternal at least avuncular*." Substantial fairness, rather than nitpicking compliance with precise regulations, must guide the Army's actions. The Army must not be allowed to reach, step by technical step, a result which, viewed in its entirety, constitutes an overreaching leap into the arbitrary and inequitable.

<u>Robinson</u> at 951 [emphasis added].

25. A closer case combined these approaches to allow judicial review of an untimely reconsideration motion to a VA agency. <u>Jaquay v. Principi</u>, 304 F.3d 1276, 1287-88 (Fed.Cir 2002) (jurisdiction over appeal of *pro se* veteran's benefits claim after untimely motion for reconsideration to VA agency was equitably tolled).

26. Moreover, the courts generally "must take pains to protect the rights of parties against the consequences of technical errors" when preceding without counsel at the agency level. <u>See cf</u>, <u>Calloway v. Brownlee</u>, 366 F.Supp.2d 43, 51 (D.D.C. 2005)(BCMR remand to address overlooked issues), <u>citing</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (recognizing that *pro se* litigants are held

to less stringent standards than those who are counseled by attorneys).

27. Finally, the provisions of the BCMR enabling statute, 10 U.S.C. ¶ 1552, make no distinction between original applications and requests for reconsideration. <u>Lipsman v. Sec'y of Army</u>, 335 F.Supp.2d 48 (D.D.C.2004)(provisions of ¶ 1552 apply to both types of applications).

28. In sum, the principles of <u>Henderson</u> apply— the long standing "solicitude of Congress for veterans" must protect disability claimants for informal, non-adversarial proceedings by avoiding rigid procedures causing harsh results.  And under <u>Robinson</u>, the paternalistic relation of the BCMR to its soldiers, must not be guided by nitpicking compliance with precise procedures, but to apply compassion to recognize inequity.

29. It follows that § 1552(c) allowing "interests of justice" waiver of the 3-year deadline, should in principle extend to equitably toll or suspend the 1 year deadline on requests for reconsideration.  That is, assuming extraordinary circumstances justify— an applicant whose illness or disability was both service-connected and caused his tardy appeal.  Moreover, the BCMR should consider three other factors whether mechanically applying a new limitations period, in this case, implicates retroactivity concerns that were manifestly unfair:  (1) the 1989 denial induced Adamski's reliance in that future reconsideration by the Board— under longstanding policy— "will be granted" upon presentation of newly discovered relevant evidence not previously considered by the BCMR; (2) the newly discovered evidence of the 1972-73 Army personnel and health records, the 2004 VA disability decision commenting on these records showing "continuous treatment" for PTSD from 1973, and the 1990 Social Security decision showing Adamski was diagnosed as totally mentally disabled and unemployable from 1986 to present; and (3) the BCMR after its 2006 rule change began providing notice *prospectively* in BCMR denials of the 1-year reconsideration limit.

30. The case should be remanded or suspended to permit the BCMR to reconsider Adamski's original request for reconsideration of 2010.

## CAUSE OF ACTION

The 2011 action of the Army Board for Correction of Military Records Army, denying plaintiff's request to reconsider the Board's 1989 decision violated the Administrative Procedure Act as arbitrary and capricious agency action, as an abuse of discretion, was unsupported by substantial evidence, not in accordance with law, or was otherwise an injustice.

## PRAYER FOR RELIEF

That this Honorable Court declare that the Army BCMR's 2011 refusal to reconsider the Board's 1989 decision violated the Administrative Procedure Act as arbitrary and capricious agency action, as an abuse of discretion, unsupported by substantial evidence, not in accordance with law, or was otherwise an injustice.

That the Court remand to the BCMR for appropriate relief;

Or in the alternative, that the Court suspend proceedings to permit the BCMR to reconsider plaintiff's original request for reconsideration of 2010.

Respectfully Submitted,

a/s John A. Wickham, DC Bar 454863
32975 Saint Moritz Drive
Evergreen, CO 80439.
303 670-3825 fax: 303 670-1586
wickham1@wispertel.net  (ECF account email)

Counsel for Plaintiff Thomas Adamski