# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THOMAS G. ADAMSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-cv-0094 (KBJ) |
| | ) | |
| JOHN McHUGH, *Secretary of the Army*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Thomas Adamski is a former soldier in the United States Army who has spent decades trying to get the Army to modify his military records. Adamski was an active duty enlisted soldier from 1970 until 1973, when he was involved in a harrowing parachute-jumping incident and voluntarily requested early separation from military service. In 1988, Adamski applied to the Army Board for Correction of Military Records ("ABCMR" or "the Board") seeking to have his separation status changed from "voluntary" to "disability" in order to reflect what Adamski alleges is the real reason that his military service came to an end: previously undiagnosed post-traumatic stress disorder ("PTSD"). The Board denied Adamski's application to correct his records in 1989; and then, nearly two decades later, Adamski requested in writing that the Board reconsider this denial in light of purportedly new evidence regarding his condition. The Board allegedly responded to Adamski's request for reconsideration by refusing to act on it, citing a regulation promulgated in 2006 that requires all such reconsideration requests to be submitted to the Board within one year of the initial denial. Adamski has

filed the instant action against the Secretary of the Army ("Defendant" or "the Secretary") to challenge the Board's application of the 2006 regulation to his request for reconsideration. Adamski alleges that the Board acted "ultra vires"—*i.e.*, in excess of its statutory authority—when it relied on that regulation to reject his reconsideration request. (*See* Am. Compl., ECF No. 22, at 1, 10.)[1]

Before this Court at present is Defendant's motion to dismiss Adamski's amended complaint. (*See* Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 23, at 1.) Defendant argues that the six-year statute of limitations for actions against the federal government set forth in 28 U.S.C. § 2401(a) bars Adamski's claim against the Secretary, and that, in any event, Adamski has failed to plead adequately the elements of an ultra vires claim. (*See id.*) As explained fully below, this Court finds that the statutory limitations period does not bar Adamski's challenge, and thus that the Court has subject matter jurisdiction over the amended complaint. However, it appears that the doctrine of prudential exhaustion (which is *not* a pleading requirement in this context) may apply under the circumstances presented here. Thus, Adamski may have needed to exhaust available administrative remedies prior to seeking relief in federal court, but the amended complaint is silent regarding whether or not Adamski actually challenged the Board's application of the one-year regulation to him under the administrative process. Consequently, this Court concludes that additional submissions are required to resolve the exhaustion issue, as explained below. Accordingly, the Secretary's motion to dismiss will be **DENIED**, and the Court will order the parties to engage in a period of limited discovery on the issue of administrative exhaustion.

---

[1] Page numbers throughout this memorandum opinion and order refer to those that the Court's electronic filing system assigns.

## I.    BACKGROUND

### A.    Facts

The facts that are related in this memorandum opinion and order appear in Adamski's amended complaint and are largely undisputed.

### 1.    Adamski's Military Service, Separation, And Subsequent Health Problems

Adamski enlisted in the Army in 1970 and was trained as a paratrooper.  (*See* Am. Compl. ¶¶ 1, 2.)  During a training jump in November of 1972, Adamski had a "near-death" experience—his primary chute failed to open and his auxiliary chute did not open until the very last moment.  (*Id.* ¶ 2.)  Shortly after this distressing training-jump incident, Adamski allegedly developed eye twitches and nervous tics.  (*See id.*)  Moreover, he began to receive negative performance reports with respect to his work, and he was eventually terminated from jump status.  (*See id.*)  A few months later, in March of 1973, Adamski requested early separation from the Army.  (*See id.* ¶ 3.)  Adamski alleges that, at the time of his separation request, he "omitted reporting" any physical, mental, or emotional health concerns as a reason for ending his military service; instead, the justification he provided for requesting early separation was that he needed to return home to help with his family's farm work.  (*Id.*)  According to the amended complaint, the Army granted Adamski's request and released him from military service in June of 1973.  (*See id.*)

The amended complaint alleges that, as a direct result of the training-jump incident, Adamski has suffered from debilitating PTSD and has had to undergo long stretches of hospitalization and medical treatment.  (*See, e.g.*, *id.* ¶¶ 6, 12.)  The amended complaint also explains that PTSD was not listed in the Diagnostic and

Statistical Manual of Mental Disorders ("DSM") until 1980, and that the Veterans

Administration ("VA") did not formally recognize PTSD as a medical condition until

1982.  (*See id.* ¶ 4.)  Furthermore, the doctors at the VA who were treating Adamski for

chronic emotional and mental health problems did not diagnose him with PTSD until

1986.  (*See id.* ¶ 6.)

In light of his PTSD diagnosis, the Social Security Administration allegedly

granted Adamski "total disability" status in 1990, retroactive to 1986.  (*Id.* ¶ 9.)

Adamski also alleges that, in 2004, the VA formally recognized that his PTSD is

"service-connected"—*i.e.*, that it stems from the 1972 training-jump incident—and that,

as a result of this medical condition, Adamski is effectively unemployable.  (*Id.* ¶ 11.)

According to the amended complaint, the VA's 2004 recognition reversed an earlier VA

determination (made in 1987) in which the agency initially declined to characterize

Adamski's condition as PTSD, relying on an older, more limited DSM definition.  (*See

id.* ¶ 7.)  Adamski asserts that, with its 2004 decision, the VA finally acknowledged that

he has received "continuous treatment for what amount[s] to" PTSD since he left the

Army in the early 1970s.  (*Id.* ¶ 11 (internal quotation marks omitted).)

## 2.   Proceedings Before The ABCMR

Although both the Social Security Administration and the VA purportedly have

recognized that Adamski suffers from service-related PTSD stemming from the 1972

parachute debacle, Adamski has thus far been unsuccessful in his attempts to have the

Army change his military records to reflect his contention that he sought discharge due

to PTSD.

a.     *Adamski's Initial Application In 1988*

Adamski asserts that he first applied to the ABCMR in 1988 seeking to change his military separation status from "voluntary" to "disability" or "retirement." (*See id.* ¶ 8.) The amended complaint states that, "[d]ue to his deteriorating mental condition[,]" Adamski submitted relatively few records to the Board in support of this initial application for records correction. (*Id.*) Adamski alleges that the Board denied his application in 1989, finding that the statutory clock for Adamski's application had started to run in 1973, and that it would not be in the interest of justice to waive the general three-year statutory time limit in Adamski's case. (*See id.*) In so concluding, Adamski claims that the Board relied in part on the VA's 1987 decision that declined to characterize Adamski's health problems as service-related PTSD. (*See id.*) In addition, Adamski maintains that the Board indicated in its 1989 denial that—in accordance with then-current Army regulations—the Board would be willing to reconsider Adamski's application if he could present "newly discovered relevant evidence not previously considered by the Board." (*Id.* ¶ 17 (citing A. Reg. 15-185, ¶ 22 (1977)).)

b.     *Adamski's Request For Reconsideration In 2010*

Adamski alleges that, in 2010, he filed a request for reconsideration of the Board's denial of his records correction application, and that he attached various "Army health and personnel records" as supporting evidence, including the VA's 2004 decision recognizing his service-connected PTSD and the Social Security Administration's 1990 decision granting him disability status. (*Id.* ¶ 13.) According to Adamski, in 2011, the Board sent him a letter in which it stated that it was refusing to consider his request based on a regulation enacted in 2006 that requires all requests for reconsideration to be

filed within one year of the Board's initial decision.  (*Id.* ¶ 16; *see also id.* ¶ 18 (citing A. Reg. 15-185, ¶ 2-15b (2006)).)

## B.   Procedural History

Adamski initiated the instant civil action on January 23, 2014 (*see* Compl., ECF No. 1), and filed his amended complaint with leave of Court on November 19, 2014 (*see* Minute Order dated Nov. 19, 2014).  The amended complaint contains a single count alleging that the Board's "particular application of" the 2006 regulation to Adamski's request for reconsideration "was *ultra vires* agency action exceeding the limits of [the Board's] authority under 10 U.[S.C.] § 1552(a)(1)[.]"  (Am. Compl. at 10.)  Adamski seeks an order from this Court remanding his case to the Board and instructing the Board to process and consider his request for reconsideration.  (*See id.* at 10–11.)

Defendant filed the instant motion to dismiss on December 5, 2014.  (*See* Def.'s Mot.)  Defendant argues, first, that this Court lacks subject matter jurisdiction and must dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1) because Adamski's claim is untimely under the jurisdictional six-year statute of limitations for actions against the federal government that is found in 28 U.S.C. § 2401(a).  (*See* Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Br."), ECF No. 23, at 8–11; *see also* Mot. Hr'g Tr., May 26, 2015, at 13:11–14:9.)  Defendant further argues that the amended complaint fails adequately to allege an ultra vires claim for relief—and is thus subject to dismissal under Federal Rule of Civil Procedure 12(b)(6)—because, according to Defendant, Adamski has failed to point to any specific, mandatory statutory duty that the Board purportedly violated.  (*See* Def.'s Br. at 11–19.)  Adamski responds that his challenge is timely under 28 U.S.C. § 2401(a), and therefore within this Court's subject matter jurisdiction, because Adamski initiated the instant action within six years of

2011, which is when the Board applied the 2006 regulation to his request for reconsideration.  (*See* Pl.'s Opp'n to Def.'s Mot., ECF No. 26, at 20–21.)  Moreover, Adamski maintains that the Board has an affirmative obligation under 10 U.S.C. § 1552 to correct injustices in military records, and that it ignored that statutory obligation in the instant case.  (*See, e.g.*, *id.* at 24 (citing *Mullen v. United States*, 17 Cl. Ct. 578, 581 (1989); *see also* Pl.'s Notice of Suppl. Auth., ECF No. 32 (attaching as Exhibit "A" *Haselwander v. McHugh*, 774 F.3d 990 (D.C. Cir. 2014)).)

This Court held a hearing on Defendant's motion to dismiss on May 26, 2015, and took the matter under advisement.

## II.    APPLICABLE LEGAL STANDARDS

Defendant has challenged Adamski's amended complaint both for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  (*See* Def.'s Mot. at 1.)  A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction requires the court to assess its own power to entertain the action, and in order to withstand a Rule 12(b)(1) motion, "the plaintiff bears the burden of establishing [the court's] jurisdiction by a preponderance of the evidence."  *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  In reviewing such a motion, the court considers the allegations in the complaint, and it may also "consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).  The court must accept the complaint's factual allegations as true, *see Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); however, "[b]ecause Rule

12(b)(1) concerns a court's ability to hear a particular claim, the court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under . . . Rule 12(b)(6)[,]" *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011) (citations omitted).

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *See Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 71 (D.D.C. 2012). As a result, courts reviewing a motion to dismiss under Rule 12(b)(6) must accept as true all factual allegations in the complaint, and must also "grant plaintiff the benefit of all inferences that can be derived from the facts alleged[.]" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citation omitted); *see also Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 134 (D.D.C. 2013). In order to survive such a motion, the complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning that the complaint's "factual content . . . [must] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "However, the court need not accept inferences . . . [that] are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## III.   ANALYSIS

As noted, Defendant maintains that the instant lawsuit is untimely in light of the six-year statute of limitations set forth in 28 U.S.C. § 2401(a), and that, as a result, this Court lacks subject matter jurisdiction to consider Adamski's amended complaint. (*See* Def.'s Br. at 8–11.) Defendant also contends that the factual allegations in Adamski's

amended complaint do not satisfy the elements of an ultra vires claim, and thus, that Adamski is not entitled to relief as a matter of law. (*See id.* at 13–21.)  For the reasons explained below, this Court concludes that the statute of limitations poses no bar to the Court's consideration of Adamski's ultra vires claim, but that the doctrine of prudential exhaustion—which requires a plaintiff to exhaust all available administrative remedies before bringing an action in federal court—might very well prevent the Court from entertaining the instant amended complaint.  Thus, the Court will deny the pending motion to dismiss, and will require a period of limited discovery to resolve the threshold exhaustion issue.

### A.   The Statute Of Limitations In 28 U.S.C. § 2401(a) Does Not Bar Adamski's Claim

Section 2401(a) of Title 28 of the United States Code states that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  28 U.S.C. § 2401(a).  The D.C. Circuit has long recognized that "[u]nlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity," *Spannaus v. DOJ*, 824 F.2d 52, 55 (D.C. Cir. 1987), and also that, in the administrative context, a cause of action "'first accrues,' within the meaning of § 2401(a), as soon as (but not before) the person challenging the agency action can institute and maintain a suit in court[,]" *id.* at 56.

Here, Adamski has alleged that "in 2011[,] . . . [t]he [A]BCMR applied its new 2006 one-year reconsideration rule" to Adamski's request for reconsideration (Am. Compl. ¶ 16), and that, in so doing, the Board acted ultra vires and in excess of its congressionally conferred statutory authority.  (*See id.* at 1, 10; *see also* Mot. Hr'g Tr.

at 3:21–22 (Plaintiff's counsel clarifying that the amended complaint challenges only the Board's 2011 application of its 2006 regulation and *not* the Board's underlying 1989 decision).)  Thus, when the allegations of the amended complaint are considered in the light most favorable to Adamski, the relevant agency action for claim accrual purposes took place in 2011, when the Board allegedly applied the one-year regulation to Adamski and returned his request for reconsideration without action.  (*See* Am. Compl. ¶ 16; *see also* Letter from Klaus P. Schumann, Army Review Bds. Agency Case Mgmt. Div., to Thomas G. Adamski (Jan. 10, 2011), Ex. 2 to Def.'s Br., ECF No. 23-1, at 5 (returning Adamski's "request for reconsideration . . . without further action" because the request "was not received within one year of the ABCMR's original decision" in accordance with "[p]aragraph 2-15b" of "Army Regulation 15-185").)  And given that Adamski filed the instant lawsuit in 2014—only three years after the challenged agency action—it is clear that Adamski's claim against the Secretary is timely for purposes of 28 U.S.C. § 2401(a).

Defendant's argument to the contrary has no support in fact or law.  First of all, Defendant is manifestly incorrect to insist that Adamski's efforts "to focus attention on . . . 2011" were merely an "attempt to obscure" the fact that the relevant agency action for claim accrual purposes actually "occurred in 1989[.]"  (Def.'s Br. at 8–9.)  As explained above—and as was verified at this Court's hearing on the motion to dismiss—Adamski's complaint challenges the Board's allegedly unjustified refusal *in 2011* to process the request for reconsideration that Adamski had filed the previous year, and not the Board's initial decision in 1989 to let his record stand without

amendment.[2]  Furthermore, the cases that Defendant's brief cites to support the proposition that requests for reconsideration do not extend the statute of limitations (*see id.* at 17 n.10) are inapposite because the claim at issue here relates to the independent legal error that the agency allegedly made in 2011, when it applied the intervening 2006 regulation to Adamski's request for reconsideration, and it is by no means an attempt to extend any claim that Adamski may have had with respect to the Board's 1989 denial.

Defendant's fallback position—that "what [the amended complaint is] actually doing is challenging the 2006 regulation itself" and thus the six-year statutory deadline expired in 2012 (Mot. Hr'g Tr. at 11:20–21, 13:20–14:9)—is also unavailing, because even if Adamski was seeking to challenge the regulation itself, it is clear that the six-year statute of limitations would not bar such a challenge in the context of this lawsuit. Under the established case law of this Circuit, a statutory limitations period "does not foreclose subsequent examination of a rule where properly brought before [a] court for review of further [agency] action *applying* it." *Functional Music, Inc. v. FCC*, 274 F.2d 543, 546 (D.C. Cir. 1958) (emphasis added).  This is because "administrative rules and regulations are capable of continuing application[,]" and because "limiting the right of review of the underlying rule would effectively deny many parties ultimately affected by a rule an opportunity to question its validity." *Id.*  Thus, courts in this jurisdiction

---

[2] Defendant actually conceded as much during argument at the motion hearing in this case:

> THE COURT: . . . [Y]our first argument is that the 1989 denial is really the basis, right, for [Adamski's] claim?

> MR. GRACE: No, Your Honor.  Not—I know that that's somewhat of what's briefed. . . .  I think there was a little confusion as to . . . what exactly the claim . . . was.  So no.  The defense is not arguing that[.]

(Mot. Hr'g Tr. 14:11–21.)

"permit[] both constitutional and statutory challenges to an agency's application . . . of a previously promulgated rule, even if the period for review of the initial rulemaking has expired." *Alvin Lou Media, Inc. v. FCC*, 571 F.3d 1, 8 (D.C. Cir. 2009) (internal quotation marks and citation omitted); *see also NLRB Union v. Fed. Labor Relations Auth.*, 834 F.2d 191, 195–97 (D.C. Cir. 1987) (explaining the various ways in which "[a]n agency's regulations may be attacked . . . once the statutory limitations period has expired"). Consequently, this Court finds that, regardless of whether Adamski "could have sought immediate review" of the 2006 regulation at the time it was promulgated, the six-year state of limitations would not prevent him from launching a substantive legal attack on the rule's validity, given the Board's application of the regulation to Adamski's reconsideration request in 2011. *See Alvin Lou Media, Inc.*, 571 F.3d at 8; *see also Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991) ("If . . . a challenger contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years following the decision by filing a complaint for review of the adverse application of the decision to the particular challenger.").

The bottom line is this: a lawsuit filed in 2014 that challenges agency conduct that occurred in 2011 falls well within the six-year statute of limitations period, and Defendant's contention that 28 U.S.C. § 2401(a) bars Adamski's claim is meritless. Therefore, this Court concludes that it has subject matter jurisdiction over Adamski's amended complaint.

**B.    Adamski's Ultra Vires Claim May Be Subject To Prudential Exhaustion Requirements But The Exhaustion Issue Cannot Be Determined At This Time**

Turning to the Defendant's assertion that Adamski's amended complaint nevertheless fails to state a claim upon which relief can be granted (*see* Def.'s Br. at 11–13; *see also* Am. Compl. at 10), the Court begins by reviewing the legal landscape regarding a claim that an agency has acted "ultra vires"—a review that leads the Court to conclude that administrative exhaustion is likely a prerequisite to maintaining the instant action, and that consideration of the exhaustion question is necessary here.

1.    Ultra Vires Claims In The Administrative Context

Literally translated, the Latin phrase "ultra vires" means "beyond the powers (of)," and as a legal term, the phrase means "[u]nauthorized" or "beyond the scope of power allowed or granted . . . by law[.]"  *Black's Law Dictionary* 1755 (10th ed. 2014). In the administrative law context, ultra vires claims come in both a statutory and a non-statutory variety; indeed, the phrase "ultra vires" is often used to describe certain claims that have been brought under provisions of the APA.  Specifically, when a plaintiff contends that a particular agency action is "not in accordance with law" under 5 U.S.C. § 706(2)(A) or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" under 5 U.S.C. § 706(2)(C), courts sometimes characterize these statutorily-based assertions as "ultra vires" claims.  *See, e.g.*, *Tex. Alliance for Home Care Servs. v. Sebelius*, 681 F.3d 402, 408 (D.C. Cir. 2012) (describing plaintiffs' claim under 5 U.S.C. § 706(2) as an argument that certain agency action "should be set aside under the APA as ultra vires"); *see also Iowa League of Cities v. EPA*, 711 F.3d 844, 876 (8th Cir. 2013) (explaining that "the APA authorizes courts to strike down as ultra vires agency rules promulgated without valid statutory authority");

13

*Nw. Envtl. Advocates v. EPA*, 537 F.3d 1006, 1014 (9th Cir. 2008) (referring to plaintiff's claims under APA sections 706(2)(A) and (C) as "ultra vires argument[s]").

There is also an ultra vires claim that can be brought in federal court "[i]f a plaintiff is unable to bring his case predicated on either a specific or a general statutory review provision[.]" *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996); *see, e.g.*, *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988) (holding that section 701(a)(1) of the APA, which prohibits judicial review to the extent that other statutes preclude it, "serves only to take away . . . the APA's own guarantee of judicial review" and "does not repeal" the availability of non-statutory review of ultra vires actions); *see also Aid Ass'n for Lutherans v. USPS*, 321 F.3d 1166, 1172–73 (D.C. Cir. 2003) (citing *Dart*, 848 F.2d at 221, 224); *Tex. Alliance for Home Care Servs. v. Sebelius*, 811 F. Supp. 2d 76, 94 (D.D.C. 2011) (citing *Dart*, 848 F.2d at 224). This type of ultra vires claim derives from the contention that the agency has acted without the authority to do so, and it is based on the inherent power of the federal courts "to reestablish the limits on [executive] authority" through judicial review. *Dart*, 848 F.2d at 224; *see also Aid Ass'n for Lutherans*, 321 F.3d at 1173 (quoting *id.*).

These different uses of the term "ultra vires" have given rise to considerable confusion regarding the intended legal claim in the instant case. At oral argument, Adamski insisted that the amended complaint contains only a non-statutory, non-APA ultra vires claim (*see, e.g.*, Mot. Hr'g Tr. at 8:3 (Plaintiff's counsel stating that he amended the original complaint to "remove[] the APA claim")), while defense counsel stated that he had been under the impression that Adamski was proceeding under the APA and that Defendant's motion to dismiss had been briefed accordingly (*see id.* at

9:17–10:6, 14:17–20).  To be sure, if the ultra vires claim that exists in the amended complaint is statutory, then there is a colorable argument that Adamski's amended complaint needs to contain allegations that satisfy all of the requirements for APA claims in order to survive Defendant's Rule 12(b)(6) motion to dismiss.  *Cf. Oryszak v. Sullivan*, 576 F.3d 522, 526 (D.C. Cir. 2009) (affirming dismissal of APA claim under Rule 12(b)(6) where challenged agency action was committed to agency discretion by law); *Hormel Foods Corp. v. USDA*, 808 F. Supp. 2d 234, 246–47 (D.D.C. 2011) (granting Rule 12(b)(6) motion to dismiss APA claim where plaintiff "failed to allege facts that demonstrate . . . final agency action"); *see also Marine Mammal Conservancy, Inc. v. Dep't of Agric.*, 134 F.3d 409, 411 (D.C. Cir. 1998) (discussing exhaustion requirements for APA claims).  However, even assuming (as this Court must) that Adamski's claim is non-statutory—and thus not subject to the particular strictures that govern APA claims including, *inter alia*, administrative exhaustion requirements—this Court finds, as a threshold matter, that the judicial doctrine of prudential exhaustion may nonetheless require Adamski to have exhausted all available administrative remedies prior to seeking relief in federal court.

      2.    <u>Prudential Administrative Exhaustion Principles May Apply Here</u>

It "is well established in the jurisprudence of administrative law[,]" *McKart v. United States*, 395 U.S. 185, 193 (1969), that parties must "exhaust administrative remedies before seeking relief from federal courts, either as a matter of congressional command or to protect the authority of the agency and to promote judicial efficiency," *Hettinga v. United States*, 560 F.3d 498, 502–03 (D.C. Cir. 2009) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992)); *see also McCarthy*, 503 U.S. at 144 ("Where Congress specifically mandates, exhaustion is required.  But where Congress has not

clearly required exhaustion, sound judicial discretion governs." (citations omitted)).

Put another way, "[t]he word 'exhaustion' . . . describes two distinct legal concepts"—

exhaustion required by statute, which is jurisdictional, and judicially required

("prudential") exhaustion, which is non-jurisdictional. *Avocados Plus Inc. v. Veneman*,

370 F.3d 1243, 1247 (D.C. Cir. 2004).  The D.C. Circuit has made clear that, as far as

prudential exhaustion is concerned, courts must require plaintiffs to exhaust available

administrative remedies if so doing would further the underlying purposes of

exhaustion.  *See Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004).  These purposes

include: (1) "giving agencies the opportunity to correct their own errors," (2) "affording

parties and courts the benefits of agencies' expertise," and (3) "compiling a record

adequate for judicial review[.]"  *Avocados Plus Inc.*, 370 F.3d at 1247 (alteration in

original) (internal quotation marks and citation omitted).  Notably, however, courts may

also excuse the otherwise applicable exhaustion requirement "if delaying judicial

review would cause irreparable injury, if the agency is not competent to address the

issue or to grant effective relief, or if further pursuit of an administrative remedy would

be futile."  *Ass'n of Flight Attendants-CWA v. Chao*, 493 F.3d 155, 159 (D.C. Cir.

2007).

        This Court believes that Adamski's claim that the Board acted outside of its

authority when it applied the 2006 regulation to Adamski's reconsideration request may

be subject to prudential exhaustion requirements, and based on the information

presented to the Court thus far, there does not appear to be any basis for excusing that

requirement.  In this Court's preliminary view, requiring Adamski to bring to the Board

or the Secretary his argument that the ABCMR acted outside of its authority when it

applied the 2006 regulation's one-year time limit to his 2010 reconsideration request seems likely to serve the underlying purposes of administrative exhaustion because, first, it would ensure that the agency has an opportunity to apply its own expertise regarding the application of that regulation in this context in order to correct (or confirm) its decision to apply the regulation to Adamski's situation, and second, the agency's consideration of the extent of its authority under the circumstances presented here would inform the parties and the Court, enhancing the record for purposes of judicial review.  This Court is also not currently aware of any circumstances that would give rise to a conclusion that the delay resulting from imposing prudential exhaustion requirements here would lead to irreparable injury, nor does it appear that exhaustion would be a futile effort, in light of recent guidance that the Secretary of Defense has given military corrections boards regarding motions for reconsideration with respect to previously unrecognized claims of PTSD.[3]  Thus, at present, this Court sees little risk, and potentially substantial benefit, in requiring Adamski to exhaust all administrative remedies here.  *See, e.g.*, *Avocados Plus Inc.*, 370 F.3d at 1251 (explaining that determining whether to require prudential exhaustion in a given case involves "'balanc[ing] the interest of the individual in retaining prompt access to a federal judicial forum against the countervailing institutional interests favoring exhaustion'"

---

[3] It appears that, since Adamski filed the instant action, the Secretary of Defense has issued supplemental policy guidance to all military correction boards—including the ABCMR—advising them "to ease the application process for veterans who are seeking" to "upgrad[e] their discharges based on claims of previously unrecognized Post Traumatic Stress Disorder (PTSD)."  Memorandum, Secretary of Defense Chuck Hagel, Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests By Veterans Claiming PTSD (Sept. 3, 2014), http://www.defense.gov/news/OSD009883-14.pdf, at 1.  Significantly for present purposes, this supplemental guidance specifically states that "[t]ime limits to reconsider decisions will be liberally waived for applications covered by this guidance[,]" *id.* at A2, which suggests that petitioning the Secretary of the Army and/or the Board to waive the 2006 regulation's one-year time limit in the instant case may be far from futile, and in fact, might result in precisely the relief Adamski seeks.

(alteration in original) (quoting *McCarthy*, 503 U.S. at 147)); *see also Ass'n of Flight Attendants-CWA*, 493 F.3d at 158–59 (requiring plaintiff to exhaust administrative remedies where plaintiff union could "petition the agencies directly for the relief they seek in this lawsuit").

Nevertheless, Defendant has not raised the exhaustion issue with respect to Adamski's claim, and this Court is mindful of the fact that failure to exhaust administrative remedies functions as an affirmative defense and not a pleading requirement in this context. *See Moore v. District of Columbia*, 445 F. App'x 365, 366 (D.C. Cir. 2011). Moreover, it is not clear on the current record whether there are administrative procedures for the review of summary rejections of requests for reconsideration by the Board (such as the one at issue here), and the parties have not had an opportunity to address the administrative exhaustion issue. Out of an abundance of caution, then, this Court will order the parties to proceed to discovery solely on the exhaustion question, and may ultimately require supplemental briefing on this issue. *Cf., e.g.*, Order, *Davis v. Architect of the Capitol*, No. 12-cv-0613, ECF No. 22 (D.D.C. Mar. 25, 2014) (ordering period of limited discovery).

For now, it is hereby

**ORDERED** that the parties shall engage in discovery with respect to the question of exhaustion for a period of **45 days**, commencing as of the date of this memorandum opinion and order and ending on **September 14, 2015**. This brief discovery period is limited to ascertaining facts regarding any available procedures for administrative review of summary rejections of requests for reconsideration and whether or not Adamski has exhausted them with respect to the instant claim. It is

**FURTHER ORDERED** that the parties shall appear for a status conference to discuss briefing and other potential procedures regarding the exhaustion question on **September 21, 2015**, at **2:30pm in Courtroom 17**.  It is

**FURTHER ORDERED** Defendant's [23] Motion to Dismiss is **DENIED**, for the reasons set forth above.  With respect to Defendant's argument that 28 U.S.C. § 2401(a) bars Adamski's claim against the Secretary, the motion to dismiss is denied with prejudice.  With respect to Defendant's argument that Plaintiff has otherwise failed to state a claim on which relief may be granted, the motion to dismiss is denied without prejudice.[4]

**SO ORDERED.**

DATE: July 31, 2015

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

---

[4] Given the unresolved exhaustion issue and the substantial confusion in the motion to dismiss briefing concerning the nature of Adamski's legal claim, this Court will neither reach nor resolve Defendant's remaining Rule 12(b)(6) arguments for dismissal at this time.  Defendant will be permitted to raise these contentions again, if necessary, in the context of any dispositive motions that might be filed after the Court has considered and decided the exhaustion issue.